UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KENT CHARUGUNDLA and MARGUERITE CHARUGUNDLA,

                        Plaintiffs,

-against-

THOMAS E. LASALA; CLAUDIO CALADO; BERNAR BEKIROV; JESSICA XIAOQING MA; MARTY KOFFMAN; MICHAEL B. FIRST, M.D.; MICHAEL NIEMTZOW; and THE MONARCH CONDOMINIUM,

                        Defendants.

25-cv-2314 (AS)

OPINION AND ORDER

ARUN SUBRAMANIAN, United States District Judge:

    Plaintiffs Kent and Marguerite Charugundla say they were denied a reasonable accommodation in violation of several federal, state, and local statutes when their condominium board denied their request for a service animal. The Charugundlas sued the Monarch Condominium, the building owner, and its individual board members (together, the "Monarch defendants"), as well as psychiatrist Dr. Michael B. First, whom the board retained to conduct an independent evaluation of Marguerite. The Monarch defendants and First now separately move to dismiss. For the following reasons, the Monarch defendants' motion is GRANTED IN PART and DENIED IN PART, and First's motion is GRANTED.

## BACKGROUND

    Kent and Marguerite Charugundla have lived at the Monarch Condominium since April 2000. Dkt. 12-3 ¶¶ 1, 19. In August 2021, Kent and Marguerite submitted a formal request to the Monarch's board for a service dog. *Id.* ¶ 20. As part of that request, the Charugundlas submitted a note from Marguerite's physician confirming that Marguerite has a disability, "not obvious or visible," that requires a service dog for her to function independently. *Id.* ¶ 21. They also informed the Monarch that Kent had become deaf in one ear, requiring a service dog to notify him "when the doorbell or any fire alarm rings." *Id.* ¶ 22.

    In response to the Charugundlas' request, the Monarch retained an independent psychiatrist—Dr. First—to evaluate Marguerite. *Id.* ¶ 23. The Monarch also asked Kent to submit additional medical documentation of his disability. *Id.* ¶ 27. The Charugundlas say that these requests contravened the Monarch's stated policy that it "will not require individuals to provide medical records concerning a disability." *Id.* ¶ 28.

Around February 2022, the Charugundlas submitted their most recent request for a service dog, which the Monarch never granted or denied. *Id.* ¶ 29. "[O]ut of the blue," around December 17, 2024, the Monarch notified the Charugundlas that they would review their request. *Id.* ¶ 30.

On January 28, 2025, after the Monarch "continue[d] to ignore [the Charugundlas'] request," the Charugundlas filed suit against the Monarch, its board members, the building owner, and First. *Id.* ¶¶ 31–36. The Charugundlas bring failure-to-accommodate claims against the Monarch defendants under the Fair Housing Act (FHA), New York Civil Rights Law (NYCRL), New York State Human Rights Law (NYSHRL), and New York City Human Rights Law (NYCHRL). *Id.* ¶¶ 38–65. They bring aiding-and-abetting claims under those same statutes against First for accepting a retainer to evaluate Marguerite. *Id.* ¶¶ 66–72. After defendants removed the case from state court, they moved to dismiss the complaint for failure to state a claim.

## LEGAL STANDARDS

To survive a motion to dismiss, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In reviewing a motion to dismiss, the Court "accept[s] all factual allegations as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Austin v. Town of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016).

## DISCUSSION

### I. The Monarch defendants' and First's statute-of-limitations challenge fails.

All defendants move to dismiss on grounds that the Charugundlas' claims are time barred. *See* Dkt. 18 at 4; Dkt. 12-2 at 6. "The lapse of a limitations period is an affirmative defense that a defendant must plead and prove." *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008) (citing Fed. R. Civ. P. 8(c)(1)). It is appropriate to resolve a statute-of-limitations challenge on a motion to dismiss only if "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 150 (2d Cir. 2024) (quoting *Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015)).

The Charugundlas say the statute of limitations began to run when they discovered that the Monarch had effectively denied their request around December 17, 2024, the last time they heard from the Monarch.[1] Dkt. 21 at 4; *see also* Dkt. 12-3 ¶ 30. Defendants say that the Charugundlas knew much earlier that their request was denied. In support, defendants point to an email

---

[1] The parties agree that the statute of limitations for the FHA claims is two years, and the statute of limitations for the state- and city-law claims is three years. 42 U.S.C. § 3613(a)(1)(A); N.Y. C.P.L.R. § 214(2); N.Y.C. Admin. Code § 8-502(d).

communication between Kent Charugundla and First from September 16, 2021 ("Exhibit C"), in which Kent inquired how First reached an opinion on Marguerite's disability without seeing her. Dkt. 17-3 at 2-3; *see* Dkt. 18 at 5; Dkt. 12-2 at 6. Defendants urge the Court to take judicial notice of this document, which they say is dispositive of the statute-of-limitations issue.

The Court declines to do so. Courts "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). The complaint does not reference the email, but defendants say that the Charugundlas relied on Exhibit C in bringing the suit. Dkt. 23 at 3; Dkt. 22 at 5. The Second Circuit has allowed judicial notice of an extrinsic document when the complaint "relies heavily upon its terms and effect," rendering it "integral" to the complaint. *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995). However, Exhibit C appears to be merely one of many communications between the Charugundlas and the defendants, unnecessary to the complaint's core allegations, and certainly not integral.

Even if the Court were to take judicial notice of Exhibit C, it would not be grounds for dismissal. For "materials outside the record" to "become the basis for a dismissal," "[i]t must . . . be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). Here, the email does not unambiguously express that the Charugundlas' request was denied. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 112–13 (2d Cir. 2010) (holding that district court erred by dismissing contract claim based on an email that did not definitively communicate "an intent to forgo performance or . . . refusal to perform"). In the email, Kent says to First that he received a message from the Monarch that "First could not determine the existence of a disability," and "[t]hus, to further your application, the Board needs Dr. Sun to provide information reflecting that [Marguerite has] a mental disability." Dkt. 17-3 at 2. All this email shows is that the Board asked for more information from the Charugundlas, and that the Charugundlas were upset with First for not endorsing their application.

Accordingly, accepting all factual allegations as true and drawing all reasonable inferences in the plaintiffs' favor, it is unclear whether the Charugundlas knew or had reason to know of their injury outside of the applicable limitations periods. Because the statute of limitations is an affirmative defense that must be clear from the face of the complaint, defendants' timeliness challenge fails.

## II.    The Charugundlas have plausibly alleged the board members' involvement.

The board defendants—Claudio Calada, Bernar Bekirov, Jessica Xiaoqing Ma, Marty Koffman, and Michael Niemtzow—move to dismiss the claims against them for failure to allege any of them were members of the board during the relevant time period or that they participated in the decisions underlying the Charugundlas' claims. Dkt. 18 at 8.

To survive a motion to dismiss, a claim merely needs to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. On time period, the Charugundlas allege that Calada, Bekirov, Ma, and Niemtzow currently serve on the board, and that Koffman did from 2019 to 2023. Dkt. 12-3 ¶¶ 3–7. They further allege that all five served on the board during the time referenced in the complaint, which includes the 2024 "refusal" to adjudicate the Charugundlas' request. *Id.* ¶ 32. On participation, the Charugundlas allege that the board defendants were responsible for the Monarch's decision to retain First and for the Monarch's continued refusal to address their request for a reasonable accommodation. *Id.* ¶¶ 32–33. Taken together, these allegations allow for a plausible inference that the board members participated in the alleged conduct.

To the extent that the Monarch defendants challenge the accuracy of those allegations, *e.g.*, whether the board defendants actually are responsible for ignoring or rejecting the Charugundlas' request, those are factual inquiries that the parties may explore in discovery, and which may be presented at summary judgment or trial.

### III. The Charugundlas' failure-to-accommodate claim under the FHA survives in part.

The Charugundlas allege that the Monarch defendants violated the FHA by failing to "make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B); *see* Dkt. 12-3 ¶¶ 41–43. To prove a violation under this provision, "a plaintiff must show (1) that the plaintiff or a person who would live with the plaintiff had a handicap within the meaning of [the FHA]; (2) that the defendant knew or reasonably should have been expected to know of the handicap; (3) that the accommodation was likely necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation requested was reasonable; and (5) that the defendant refused to make the requested accommodation." *Olsen v. Stark Homes, Inc.*, 759 F.3d 140, 156 (2d Cir. 2014). Defendants say that the Charugundlas have failed to allege prongs one and three. Dkt. 18 at 6; Dkt. 12-2 at 9–10.

#### A. Kent Charugundla adequately alleges that he is disabled within the meaning of the FHA, but Marguerite does not.

Defendants argue that the Charugundlas failed to plead that they are disabled within the meaning of the FHA. Dkt. 18 at 8–9; Dkt. 12-2 at 9. To demonstrate a disability—termed "handicap" under the FHA—a plaintiff must show: "(1) a physical or mental impairment which substantially limits one or more . . . major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment." 42 U.S.C. § 3602(h); *see also Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 40 (2d Cir. 2015). "Major life activities include 'functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" *Reg'l Econ. Cmty. Action Prog., Inc. ("RECAP") v. City of Middletown*, 294 F.3d 35, 47 (2d Cir. 2002) (quoting 28 C.F.R. § 41.31(b)(2)); *see also* 28 C.F.R. § 35.108(c)(1)(i). "Substantially limits" means an individual has an impairment that "prevents or

4

severely restricts [a major life activity]" and its "impact must also be permanent or long-term." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 185 (2002).[2]

Kent alleges that he is "deaf in one ear," and that he requires a service dog "to help him function independently by notifying him when the doorbell or any fire alarm rings." Dkt. 12-3 ¶ 22. Marguerite alleges that she has a "disability," which "requires a service dog in order to function independently." *Id.* ¶ 21. The note that the Charugundlas submitted to the board from Marguerite's doctor, Dr. Sun, which is incorporated by reference into the complaint, says that Marguerite has "emotional mental health issues" that create "certain limitations related to social interactions and coping with mental stress" and that "[t]he emotional support animal is necessary to provide therapeutic emotional support and allow the patient to fully use and enjoy [her] dwelling." Dkt. 17-2 at 2. Defendants say that these allegations are insufficient to plausibly allege a disability under the FHA for both Kent and Marguerite.

The Court agrees as to Marguerite. Although Marguerite says she has a mental impairment that requires a service dog, neither she nor Dr. Sun provide any information about what that impairment is or how it limits her life activities beyond imposing "limitations related to social interactions and coping with mental stress." Dkt. 17-2 at 2. This does not suffice to allege that Marguerite is disabled under the FHA. *See Ball v. Hope East of Fifth HDFC Inc.*, 2024 WL 493977, at *3 (S.D.N.Y. Feb. 8, 2024) (dismissing FHA claim because "[p]laintiff seems to allege that he is physically disabled, but he does not allege what that disability is").

Kent's allegations, however, are sufficient at the pleading stage. Deafness in one ear plainly constitutes a physical impairment. The Monarch defendants say Kent did not allege his partial deafness substantially limits his "ability to understand speech or communicate." Dkt. 18 at 9–10. But that's not required, given that hearing itself is a major life activity. *See RECAP*, 294 F.3d at 47 (noting that hearing is a major life activity). Moreover, "whether [an] impairment substantially limits a major life activity is ordinarily a question of fact for the jury." *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1142 (10th Cir. 2011). Accordingly, Kent has plausibly alleged a disability within the meaning of the FHA.

Plaintiffs may amend their complaint if they wish to allege further facts that would satisfy the FHA's disability requirement as to Marguerite Charugundla.

---

[2] Prior to the ADA Amendments Act of 2008 ("ADAAA"), "the ADA definition of 'disability' was virtually identical to the FHA definition of 'handicap.'" *Rodriguez*, 788 F.3d at 40 n.10. The ADAAA responded to the Supreme Court's holding in *Toyota Motor*, 534 U.S. at 184, and clarified that "substantially limits" under the ADA should be "construed broadly in favor of expansive coverage" and "is not meant to be a demanding standard." *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 92 (2d Cir. 2021) (quoting 28 C.F.R. § 35.108(d)(1)(i)). However, the Second Circuit has held that the FHA "was not similarly amended and so our FHA interpretation is still guided by our pre-ADAAA cases." *Rodriguez*, 788 F.3d at 40 n.10; *see also Logan v. Matveevskii*, 57 F. Supp. 3d 234, 255 (S.D.N.Y. 2014) ("Absent persuasive evidence to the contrary, the Court must presume that [the new standard announced in the ADAAA does not apply to the definition of 'handicapped' under the FHA]." (quoting *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 2012 WL 6562766, at *5 (M.D. Fla. Dec. 17, 2012))).

### B. Kent Charugundla adequately alleges that his accommodation may be necessary.

Defendants further argue that the Charugundlas failed to plead that the requested accommodation was necessary. Dkt. 18 at 10; Dkt. 12-2 at 10. To make out a failure-to-accommodate claim under the FHA, plaintiffs must show that the accommodation "may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B); *Olsen*, 759 F.3d at 156. A necessary accommodation does not simply satisfy "an aesthetic or functional preference," *Monterroso v. City of New York*, 2024 WL 360816, at *8 (S.D.N.Y. Jan. 31, 2024), but rather "alleviates the effects of a disability." *Tuman v. VL GEM LLC*, 2017 WL 781486, at *6 (S.D.N.Y. Feb. 27, 2017).

Defendants' argument fails. Kent Charugundla has plausibly alleged that a service dog would "alleviate[] the effects," *id.*, of his partial hearing loss "by notifying him when the doorbell or any fire alarm rings," Dkt. 12-3 ¶ 22. This is sufficient to "explain why the accommodation [was] necessary to afford [him] an equal opportunity to use and enjoy the home." *Monterroso* , 2024 WL 360816, at *5; *see Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1226 (11th Cir. 2008) ("In [the FHA] context, 'equal opportunity' . . . mean[s] that handicapped people must be afforded the same (or 'equal') opportunity to use and enjoy a dwelling as non-handicapped people, which occurs when accommodations address *the needs created by the handicaps.*").[3]

### IV. The failure-to-accommodate claims under the NYSHRL and NYCHRL survive as to Kent Charugundla.

For the same reasons, Kent Charugundla's failure-to-accommodate claims under the NYSHRL and NYCHRL claims survive, while Marguerite's do not. Although "[t]he definitions of disability under the New York State Executive Law and the New York City Administrative Code are broader than the [FHA] definition," *Giordano v. City of New York*, 274 F.3d 740, 753 (2d Cir. 2001), Marguerite has not "allege[d] sufficient facts from which the Court can determine" whether she meets those definitions. *See Lopez v. Lancaster Farm Fresh Organics, LLC*, 2021 WL 3884296, at *6 (E.D. Pa. Aug. 31, 2021).

### V. The failure-to-accommodate claim under the NYCRL is dismissed.

Defendants also move to dismiss the Charugundlas' claim under section 47 of the NYCRL, which provides that "[n]o person shall be denied admittance to and/or the equal use of and enjoyment of any public facility solely because said person is a person with a disability and is accompanied by a guide dog, hearing dog[,] or service dog." N.Y. Civ. Rights Law § 47(1). The Charugundlas are not accompanied by a dog—indeed, that's the source of their complaint—and

---

[3] The discriminatory animus point raised by defendants, Dkt. 18 at 11; Dkt. 12-2 at 10-11, is moot because the Charugundlas clarify that they are asserting a reasonable accommodation claim, not a disparate treatment claim, which does not require a showing of discriminatory animus. *Austin*, 826 F.3d at 624 (stating that nothing in the FHA "requires that the denial of modifications or accommodations be the result of a discriminatory animus toward the disabled").

they cite no case law providing that section 47 has any application under these circumstances. Count two is dismissed.

### VI. The aiding-and-abetting claims against First are dismissed.

#### A. The aiding-and-abetting claim under the FHA is dismissed.

"[T]he FHA does not contain a stand-alone aiding and abetting provision, outside of the substantive prohibitions on discrimination, 42 U.S.C. § 3604, and the prohibition on coercion, intimidation, threats, and interference, § 3617." *Lefkowitz v. Westlake Master Ass'n, Inc.*, 2019 WL 669806, at *5 (D.N.J. Feb. 19, 2019). The Charugundlas cite *Jenkins v. Eaton*, 2009 WL 811592 (E.D.N.Y. Mar. 27, 2009), for the proposition that aiding-and-abetting liability exists under the FHA. But there, the court held the plaintiff's aiding-and-abetting claim was "a claim for intimidation or interference under § 3617." *Id.* at *7. 42 U.S.C. § 3617 provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [the FHA]." This provision "extend[s] beyond the activities of housing providers" and "prohibits unrelated third parties from interfering with anyone who is attempting to aid others protected under the Act from obtaining housing choices." *Puglisi v. Underhill Park Taxpayer Ass'n*, 947 F. Supp. 673, 696 (S.D.N.Y. 1996). In other words, this provision applies to situations where a person who has aided or encouraged an FHA-protected individual is coerced, intimidated, threatened, or interfered with. This case is different. Here, the Charugundlas allege that First aided the Monarch defendants in an FHA violation, a plain-vanilla aiding-and-abetting claim. Section 3617 does not apply to such situations.

#### B. The aiding-and-abetting claim under section 47 of the NYCRL is dismissed.

The aiding-and-abetting claim is also dismissed to the extent that it is premised on section 47 of the NYCRL. As the Court explained above, that statute applies only where plaintiffs are already accompanied by a service dog, which isn't the case here.

#### C. The other aiding-and-abetting claims under the NYSHRL and NYCHRL are dismissed.

As to the NYSHRL and NYCHRL, the parties agree that these statutes create independent causes of action for aiding-and-abetting violations. N.Y. Exec. Law § 296(6); N.Y.C. Admin. Code § 8-107(6). The standard for the two "is virtually identical." *Mauro v. N.Y.C. Dep't of Educ.*, 2020 WL 5899522, at *8 (S.D.N.Y. Apr. 29, 2020) (citing *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 367 (S.D.N.Y. 2012)). To be liable for aiding and abetting a failure-to-accommodate claim, an individual must have "actually participate[d]" in the conduct giving rise to the claim. *Feingold v. New York*, 366 F.3d 138, 157–58 (2d Cir. 2004). Further, aiding and abetting liability "requires that the aider and abettor share the intent or purpose of the principal actor." *Fried v. LVI Servs., Inc.*, 2011 WL 2119748, at *7 (S.D.N.Y. May 23, 2011).

The complaint is devoid of any allegations that First was involved in the Monarch's decision to deny Kent Charugundla's request. So the aiding-and-abetting claim against First must be dismissed.

Moreover, even if Marguerite Charugundla's NYSHRL and NYCHRL claims had survived, she has not plausibly alleged that First "actually participate[d]" in the Monarch's discriminatory conduct. Courts in this district have found actual participation when defendants were "at least in some way directly involved" in the discriminatory conduct. *Stevens v. New York*, 691 F. Supp. 2d 392, 401 (S.D.N.Y. 2009) (declining to dismiss aiding-and-abetting claims against two defendants, one who had summoned the plaintiff to the meeting at which he was fired, and another who had been present at the meeting); *see also Pedi v. Gov't Emps. Ins. Co.*, 2012 WL 6918388, at *3 (S.D.N.Y. Dec. 10, 2012) (declining to dismiss aiding-and-abetting claims against plaintiff's direct supervisor, who was on the call when plaintiff was fired, because it could be "reasonably inferred that [the defendant's] opinion was taken into account in deciding whether to terminate plaintiff").

Here, the Charugundlas only allege that First "accepted the retainer" and "was ready, willing, and able to conduct the independent psychiatric evaluation of [Marguerite]." Dkt. 12-3 ¶¶ 67, 70. They do not allege that he actually completed an evaluation of her disability, nor do they allege that First was in any way directly involved in the Monarch's decision to deny the Charugundlas' request. And Marguerite also fails to plead that First in any way shared the "intent or purpose" of the Monarch defendants. *See Fried*, 2011 WL 2119748, at *7.

Plaintiffs may amend their complaint if they wish to allege further facts that would satisfy the aiding-and-abetting requirements against First.

## CONCLUSION

For these reasons, the Monarch defendants' motion is GRANTED IN PART and DENIED IN PART, and First's motion is GRANTED. Any amendment of the complaint consistent with this opinion must be filed and served no later than September 30, 2025. The Clerk of Court is directed to terminate Dkts. 12 and 16.

SO ORDERED.

Dated: September 22, 2025
New York, New York

ARUN SUBRAMANIAN
United States District Judge